A03A0217. BYRD v. THE STATE.
(574 SE2d 655)

ELDRIDGE, Judge.

A Floyd County jury found Anthony H. Byrd guilty of statutory rape for acts he perpetrated against the minor daughter of his ex-wife. He appeals and raises as his sole enumeration of error that a guilty verdict was unauthorized because there was insufficient evi-

---

dence to corroborate the victim's testimony as required by Georgia's statutory rape statute, OCGA § 16-6-3.[1] We disagree and affirm.

This Court has held that the quantum of corroboration needed in a statutory rape case is not that which is, itself, sufficient to convict, "but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration and ultimately the question of corroboration is one for the jury."[2] In that regard, a victim's prior consistent statements, in the form of her outcry to others as testified to by them, may constitute sufficient corroboration in a case of statutory rape.[3]

In this case, the victim testified that she first had sexual intercourse with Byrd when she was approximately 14 years old and living with her mother on Glenview Road near Rome. She testified that Byrd took her in his truck to a creek in the woods on John's Mountain; that he walked down to the creek and she followed; that she started to walk back to the truck because she "felt uncomfortable"; that, when asked, she told Byrd that she was going back to the truck, "and he came up there and he grabbed [her] waist"; that Byrd removed her clothing and had sexual intercourse with her in the truck; and that, thereafter, he told her not to tell anyone and bought them both alcoholic beverages to drink in the truck. The victim testified that she told her friend, A. B., about the incident. In addition, the victim testified to numerous other incidents of sexual intercourse with Byrd.

The victim's testimony was corroborated by her mother, Cathy S., who testified that, after her divorce from Byrd and while the victim was living with her on Glenview Road, Byrd began to come by her house when she was not there in order to see the victim: "every time I would leave the house to go to work, pay bills, whatever, whenever I would come back, I would find out he had been there"; that, when the victim was 14, Cathy S. called Byrd's cellular telephone in order to locate her daughter, and, when Byrd answered, he told her that he and the victim "was coming off of John's Mountain"; that she began to have behavioral problems with the victim, including the victim drinking and "sneaking out windows" at night; and that she became suspicious that the victim was engaging in sexual activity with Byrd when "he started trying to come by when I wasn't there, . . . and calling all the time when I wasn't there. And when he knew that I was at work, hours that he knew that — knew that I would be at work." In addition, shortly after moving from Glenview Road,

---

[1] "[N]o conviction shall be had for this offense [(statutory rape)] on the unsupported testimony of the victim." OCGA § 16-6-3 (a).

[2] (Citation omitted.) *Salazar v. State*, 245 Ga. App. 878, 880 (2) (539 SE2d 231) (2000).

[3] *Turner v. State*, 223 Ga. App. 448, 450 (477 SE2d 847) (1996).

Cathy S. located a lengthy letter in the victim's closet addressed to Byrd; in it, the victim expressed undying love for Byrd and recounted an incident of sexual intercourse: "Tony [(Anthony Byrd)] you might think I don't remember that night in the truck out in the woods but I remember that night like it was yesterday and I always will remember it. Tony that was one fine night. I could do it all night."

The victim's testimony was further corroborated by her friend, A. B., who testified that, when the victim was living with her mother on Glenview Road, she told A. B. that Byrd and she were having a sexual relationship: "She just said they've had sex and that they were seeing each other."

We find that, taken as a whole, the above evidence was sufficient to corroborate the victim's testimony. Accordingly, a reasonable trier of fact could rationally find from all the evidence proof beyond a reasonable doubt of Byrd's guilt of statutory rape.[4]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 22, 2002.

*Teddy L. Henley*, for appellant.
*Bryant G. Speed II, District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.

---

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Legg v. State*, 207 Ga. App. 399, 400 (2) (428 SE2d 87) (1993).
[1] McCollum's first trial resulted in a mistrial.