**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0240. ATKINS v. THE STATE.

BETHEL, Judge.

Jerome Atkins appeals the denial of his motion for a directed verdict on a statutory rape charge, arguing the trial court erred when it found sufficient corroborating evidence. Atkins further argues that the trial court erred in denying his motion for a new trial because the trial court wrongly applied the Rape Shield Statute. We disagree and affirm the denial of his motions for a directed verdict and for a new trial.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though

contradicted, to support each fact necessary to make out the

State's case, we must uphold the jury's verdict.

*Traylor v. State*, 332 Ga. App. 441, 442 (773 SE2d 403) (2015) (citation omitted).

So viewed, the evidence shows that in November 2010, A. O.'s mother learned that A. O. was pregnant after taking her to a gynecologist. Following the appointment, A. O.'s mother discussed the pregnancy with A. O., who was thirteen years old at the time. A. O. was asked who fathered the child, and she told her mother that the father was a "boy in the neighborhood." A. O.'s mother called Leon Surles[1] to inform him about the pregnancy. Surles did not believe A. O.'s explanation and, at some point, threatened to give her a lie detector test.

After returning home from school, A. O. called Atkins and his wife and told them she was pregnant by Atkins. Following this conversation, Atkins called Surles and told him that A. O. had called and that she planned to tell Surles she was pregnant with Atkins' child so that she could have an abortion. Atkins denied both paternity

---

[1] Leon Surles is not A. O.'s biological father but maintains a father-daughter relationship with A. O.

2

and sexual contact with A. O. in his conversation with Surles.[2] Surles told A. O.'s mother about the call with Atkins.

Surles then spoke with A. O. and threatened to "beat her" and "take her to the police" if she did not tell the truth about the paternity of her child. A. O.'s mother told A. O. that she knew Atkins had fathered the child, and A. O. said that was true. A. O.'s mother then reported the incident to police.

A. O. was interviewed by law enforcement personnel and reported two alleged incidents with Atkins in which he engaged in sexual acts with her.[3] A. O. stated that Atkins was the only possible father of her child because she had not been sexually active immediately prior to or after the August 2010 incident with Atkins.

---

[2] Surles testified that in his conversation with Atkins, Atkins stated that A. O. had asked Atkins to have sexual intercourse with her and had asked his wife to perform oral sex on her, but that they had refused A. O.'s requests.

[3] During her initial interview with police on November 20, 2010, A. O. claimed that on August 15, 2010, while sleeping on the floor of Atkins' apartment, she awoke to find Atkins on top of her having sex with her. During her later forensic interview, A. O. alleged for the first time that a prior incident occurred in June or July of 2010, with both Atkins and his wife at their previous residence.

A. O. had an abortion on November 27, 2010, and a search warrant for the DNA of the fetus was executed. Results of the DNA test showed that Atkins was not the father of A. O.'s child.[4]

Nevertheless, Atkins was indicted on charges of statutory rape and aggravated child molestation. At trial, Atkins maintained his innocence and argued that A. O. identified him as the father to conceal the child's true paternity. Atkins sought to question A. O. about the identity of the true father for the purpose of demonstrating A. O.'s motive to falsely accuse Atkins. The trial court, relying on the Rape Shield Statute, did not allow that line of questioning. A jury found Atkins guilty on both counts.[5] Following the verdict, Atkins moved for a new trial, which the trial court denied. This appeal followed.

1. The trial court found there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that Atkins was guilty of statutory rape. However, Atkins contends the trial court erred in denying his motion for directed

---

[4] At the time of the abortion, the fetus was approximately eleven weeks into gestation, making the time of conception on or around September 11, 2010.

[5] Atkins' wife was indicted and tried jointly as a co-defendant on charges of aggravated child molestation and child molestation. She was convicted on both counts. Her case came before us on appeal as A17A1486.

4

verdict on the charge of statutory rape because the evidence was insufficient to corroborate A. O.'s allegations.[6] We disagree.

OCGA § 16–6–3 (a) provides that "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim."

"On appeal, our review is restricted to the legal sufficiency of the evidence not the weight of the evidence." *Carson v. State*, 171 Ga. App. 527, 528 (320 SE2d 382) (1984). "If there is any corroborating evidence, we will not go behind the jury and pass upon its probative value." *McClendon v. State*, 187 Ga. App. 666, 668 (371 SE2d 139) (1988) (citation omitted).

> This Court has held that the quantum of corroboration needed in a statutory rape case is not that which is, itself, sufficient to convict, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration and ultimately the question of corroboration is one for the jury. In that regard, a victim's prior consistent statements, in the form of

---

[6] Atkins did not challenge the sufficiency of the evidence with respect to the child molestation charge.

her outcry to others as testified to by them, may constitute sufficient corroboration in a case of statutory rape.

*Byrd v. State*, 258 Ga. App. 572, 573 (574 SE2d 655) (2002) (footnotes and punctuation omitted).

In response to Atkins' motion for directed verdict, the State argued the allegations against Atkins were corroborated by the fact that (1) Atkins called Surles to tell him that A. O. was going to say Atkins was the baby's father; and (2) A. O. called Atkins and told him she was pregnant with his baby. We are unpersuaded that either statement provides sufficient corroboration.

Here, the evidence shows that, some time after learning she was pregnant, A. O. called Atkins and his wife and told them she was pregnant with Atkins' child. That statement—which was proven to be false— cannot be used to corroborate her testimony.[7]

This Court is equally unpersuaded by the argument that Atkins' call to Surles corroborated A. O.'s allegations because Atkins never admitted guilt. Surles testified that Atkins called him and said, "A. O. was going to tell [Surles] she was pregnant by

_____

[7] The trial court likewise stated that it did not find the call from A. O. to Atkins to be sufficient corroborating evidence.

[Atkins] so she can get an abortion." Surles also testified that, during that same conversation, Atkins denied A. O.'s allegations. The State's assertion that by calling Surles and denying the allegations, Atkins implicated himself and corroborated A. O.'s testimony, is nonsensical. The record before this Court is devoid of any evidence wherein Atkins admits to having sexual or intimate contact with A. O. that would meet the corroboration threshold.[8]

---

[8] *Compare Lewis v. State*, 278 Ga. App. 160, 161 (1) (628 SE2d 239) (2006) (although a victim recanted her prior statement, defendant's admission of a sexual relationship with the victim satisfied the corroboration requirement); *Reece v. State*, 241 Ga. App. 809, 810 (527 SE2d 642) (2000) (sufficient corroboration where defendant bragged to another witness about the intercourse); *Dye v. State*, 205 Ga. App. 781, 781 (2) (423 SE2d 713) (1992) (victim's testimony was corroborated by defendant who admitted that he attempted to have sexual intercourse with the victim but did not believe there was penetration).

In its brief, the State also asserts that A. O.'s trial testimony was consistent with her initial report to police and statements she made in her forensic interview.[9] We agree.

This Court's decisions hold that a victim's own prior statements to police, if found to be consistent with her later trial testimony, satisfy the corroboration requirement. *Brown v. State*, 318 Ga. App. 334, 336 (1) (733 SE2d 863) (2012); *Patterson v. State*, 233 Ga. App. 776, 776 (1) (505 SE2d 518) (1998). Here, a jury could find that A.O.'s report to the police as well as the statements she made in her forensic interview were consistent with, and corroborated, the testimony she provided at trial. *See id.*; *see also Cobb v. Hart*, 295 Ga. 89, 91 (757 SE2d 840) (2014). At trial,

---

[9] The State also argues that Atkins' general "access and contact" with A. O. provides the necessary and sufficient evidence to uphold the statutory rape conviction. However, as *Brown* makes clear, we need not reach this argument because, on their own, A.O.'s prior statements to police, which were consistent with her trial statements, provided sufficient evidence of corroboration. We note that the contact alleged here between Atkins and A. O. is different in kind and of a more general nature than that which this Court addressed in *Brown*. In *Brown*, third-party witness testimony indicated that the defendant was with the victim at the time and in the location where the offenses occurred. 318 Ga. App. at 336 (1). Here, the record establishes only that A. O. had been in Atkins' home and had spent time there on prior occasions. Beyond A. O.'s testimony, the record did not establish that Atkins and A. O. were in contact with each other or in the same location when the offenses were alleged to have occurred. We express no opinion on whether this sort of access can serve as corroborating evidence.

8

A. O. indicated that Atkins had sex with her on August 15, 2010. This was corroborated by a statement she made in her initial report to the police to the same effect. A. O. also made an identical statement in a later forensic interview. These consistent prior statements to police provide sufficient corroboration. *See Brown*, 318 Ga. App. at 336 (1). Thus, we agree with the trial court that the State introduced sufficient evidence of each element of the statutory rape charge, including sufficient evidence of corroboration, such that the jury was permitted to find Atkins guilty beyond a reasonable doubt on that charge.

2. (a) Atkins argues the trial court erred in denying his motion for a new trial and in ruling that the Rape Shield Statute prohibited him from inquiring about the paternity of A. O.'s baby at trial. We disagree.

On appeal, "[w]e review the denial of a motion for a new trial for abuse of discretion." *Heatherly v. State*, 336 Ga. App. 875, 876 (785 SE2d 431) (2016), *cert. granted* (Nov. 2, 2016). The Rape Shield Statute, OCGA § 24-4-412, provides in relevant part as follows:

(a) In any prosecution for [sexual offenses including those at issue], *evidence relating to the past sexual behavior of the complaining witness shall not be admissible*, either as direct evidence or on

cross-examination of the complaining witness or other witnesses, except as provided in this Code section. . . .

(b) In any prosecution for [such offenses], evidence relating to the past sexual behavior of the complaining witness may be introduced *if the court, following the procedure described in subsection (c) of this Code section, finds that the past sexual behavior directly involved the participation of the accused* and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

(Emphasis supplied.) Here, Atkins sought to ask the victim about paternity even though, as the trial court explained, evidence had already been introduced to the effect that "she was pregnant, that the pregnancy was aborted, and that the fetus was tested and your client [was] excluded as the father." As a result, the trial court held, "any logical person" could conclude that the victim had had sex with someone besides Atkins, such that the identity of that other person was both irrelevant and was evidence as to her past sexual behavior and thus inadmissible.

The statute clearly provides that evidence as to a victim's past sexual history is admissible only if the court "finds that the past sexual behavior directly involved the participation of the accused[.]" OCGA § 24-4-412 (b). As the Supreme Court of

10

Georgia has held, "[t]he defendant's right to confront and cross-examine witnesses concerning the victim's past sexual behavior with others must bow to accommodate the [S]tate's interest in the Rape Shield Statute." *Harris v. State*, 257 Ga. 666, 668 (1) (c) (362 SE2d 211) (1987). And this Court has repeatedly held since *Harris* that a trial court does not err in granting a motion in limine as to a victim's sexual history with a person other than the defendant. *See Snow v. State*, 228 Ga. App. 649, 651-652 (4), (5) (492 SE2d 564) (1997) (no error in court's exclusion of evidence as to how the victim had intercourse with "someone other than" the defendant and as to how her hymen had become perforated); *Williams v. State*, 257 Ga. App. 54, 55-56 (1) (570 SE2d 362) (2002) (trial court properly excluded evidence as to victims' past sexual behavior when they testified that they had not had sex with the defendant at any time before the attack at issue).[10]

It is also well-settled that the Rape Shield Statute "supersedes all evidentiary exceptions, including the res gestae rule" or any other rule tending to impeach a sex crime victim. *See Logan v. State*, 212 Ga. App. 734, 735 (1) (a) (442 SE2d 883)

---

[10] Although *Snow* and *Williams* were decided under the predecessor statute, OCGA § 24-2-3, subsection (b) of that statute was maintained without change in OCGA § 24-4-412 (b). *See* former OCGA § 24-2-3 (b) ("evidence relating to the past sexual behavior of the complaining witness may be introduced if the court . . . finds that the past sexual behavior directly involved the participation of the accused . . . .").

11

(1994) (en banc) (citations and punctuation omitted); *Turner v. State*, 312 Ga. App. 315, 319 (2) (718 SE2d 545) (2011) (victim's alleged statement to defendant about her sexual preferences and the lack of sexual activity between her and her boyfriend was properly excluded as "the very type of evidence prohibited by the Rape Shield Statute"); *Green v. State*, 221 Ga. App. 436, 436-37 (472 SE2d 1) (1996) (defendant could not introduce evidence of victim's past sexual behavior for purpose of showing she may have been pregnant at the time the allegations were made). *Compare Richardson v. State*, 276 Ga. 639, 641 (1) (581 SE2d 528) (2003) (defendant was authorized to inquire as to victim's "non-sexual" relationship with a former boyfriend when her desire to rekindle that relationship could have led her to fabricate a false claim of rape against the defendant to explain the blood and semen stains on the former boyfriend's jacket).

Atkins's requested line of inquiry concerned the identity of the father, which could not "involve [Atkins's] participation." OCGA § 24-4-412 (b). Rather, the identity of the victim's former sexual partner, which could be prejudicial to the victim in a number of ways, is precisely the information as to her "past sexual behavior" that the statute is designed to bar. *See Cox v. State*, 241 Ga. App. 388, 390 (526 SE2d 887) (1999) (evidence regarding identity of victim's sexual partner goes directly to

12

victim's past sexual behavior and is inadmissible under Rape Shield Statute). Because the trial court did not err when it granted the State's motion in limine, we affirm.

(b) While we are satisfied that the evidence sought in this case falls behind the wall erected by the Rape Shield Statute, we note potentially serious concerns regarding the notion that the act is so broad as to exclude all evidence "relating to" a victim's past sexual behavior with the sole exception being evidence related to activity which included the defendant. In so doing, we contemplate a scenario where the prosecution asserts the Rape Shield Statute to exclude evidence of the DNA results in a fact pattern similar to that in this case (i.e. where the DNA results conclusively refute a claim of the defendant's paternity) where the evidence would be highly probative of innocence, directly related to the honesty of a witness, yet clearly related to the past sexual behavior of the victim. The possibility of this scenario unfolding in a criminal case raises myriad questions related to the Confrontation Clause and Due Process protections of our constitutions. But this is not the case before us.

*Judgment affirmed. Doyle, Branch, McMillian, Mercier, and Reese, JJ., concur in Divisions 1 and 2 (a) and in judgment only in Division 2 (b). Miller, P. J., concurs*

*in judgment only. McFadden, P. J., concurs in Division 1 and dissents in Division 2.*

*Barnes, P. J., concurs in Division 1 and dissents without opinion in Division 2.*

14

# In the Court of Appeals of Georgia

A17A0240. ATKINS v. THE STATE.

McFADDEN, Presiding Judge, concurring in part and dissenting in part.

Because the trial court excluded evidence relevant to a plausible defense that was not evidence of the victim's past sexual behavior and therefore not within the scope of the Rape Shield Statute, I respectfully dissent from Division 2. I concur fully in Division 1.

After initially accusing, by name, a boy who lived in her neighborhood of impregnating her, A.O. leveled the same charge against Atkins. Notwithstanding DNA evidence that belied that charge, prosecution of Atkins continued on the theory that Atkins raped and molested her on other occasions.

Atkins filed a motion in limine, arguing that he "should have been allowed to cross-examine [A.O.] regarding her motive to make up a false story that he was the father of the child." Such evidence, he argued, would "go to her motive . . . [f]or

making up this story . . . [if] she's trying to protect her boyfriend or someone along that nature."

The trial court denied the motion, ruling:

> The pertinent evidence that will come out before the jury is that your client was alleged to be the father by the alleged victim; and DNA, the science, showed that he was not. That evidence will be placed before the jury. The jury can then conclude – she didn't impregnate herself. So the jury can then conclude, without knowing who it was or how it happened, that she had sex with somebody else. So the Court doesn't believe that any specific inquiry of the alleged victim about who, when, where and why is appropriate; and I do believe that it would violate rape shield.

So Atkins did not address A.O.'s motive to lie in his closing argument. As Atkins argues on appeal, "In the absence of cross-examination, a closing argument about who the father *could* have been was inherently speculative and unpersuasive." (Emphasis in original).

The state, however, did address motive in its closing. The state acknowledged that A.O. had "said [Atkins] raped me and I got pregnant. Not possible — no possibility that it could be anyone else's." But, the state argued, this falsehood should be attributed to A.O.'s "13-year-old mind" and to "the process of disclosure." A.O., the state assured the jury, "had no motive to lie."

2

The issue before us is whether, under the facts of this case, the identity of the person who impregnated A.O. and his relationship with her falls within the scope of the Rape Shield Statute. It does not.

The fact that A.O. was impregnated was in evidence. Only the identity of the person who impregnated her and the nature of his relationship with her was excluded. In other words, the sexual aspect of the intercourse between A.O and that person was in evidence; the non-sexual aspect was not. See *Richardson v. State*, 276 Ga. 639, 641 (1) (581 SE2d 528) (2003).

Our Supreme Court addressed the scope of the Rape Shield Statute when it upheld its constitutionality: "a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused." *Harris v. State*, 257 Ga. 666, 667 (1) (a) (362 SE2d 211) (1987) (citation and punctuation omitted).

The majority misperceives that scope. The Rape Shield Statute, the majority notes with some dismay, "is so broad as to exclude all evidence 'relating to' a victim's past sexual behavior with the sole exception being evidence related to activity which included the defendant." The majority's dismay would be warranted

3

if its reading of the statue were correct. But it is not correct. The majority's reading of the statute is contrary to *Harris*, supra. And it is contrary to the language of the statute itself — particularly language omitted from its truncated recitation of subsection (a). That omitted language is emphasized here:

> (a) In any prosecution for [sexual offenses including those at issue], evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. *For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.*

OCGA § 24-4-412 (a) (emphasis supplied). The list set out in that language has a purpose. Statutes are to be read so as to avoid a "construction that will render some of the statutory language mere surplusage[.]" *Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014). It is not, of course, an exclusive list. Its purpose is to illustrate the scope of the Rape Shield Statute. The list, and the term of enlargement with which it begins, must be read in light of the statutory canon of construction, ejusdem generis. Under this principle,

4

when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis (i.e., of the same kind or class) with the things specifically named, unless, of course, there is something to show that a wider sense was intended. [Cits.]

*Center For A Sustainable Coast v. Coastal Marshlands Protection Committee*, 284 Ga. 736, 737-738 (670 SE2d 429) (2008), citing *Dept. of Transp. v. Montgomery Tank Lines*, 276 Ga. 105, 106 (n. 5) (575 SE2d 487) (2003). See also *Wilson v. Clark Atlanta Univ.*, 339 Ga. App. 814, 834 (2) (c) (794 SE2d 422) (2016) ("Under the rule of ejusdem generis, the words 'including but not limited to' ordinarily should be construed as referring to [things] of the same kind as those specially named.") (citations omitted). So the evidence excluded by the Rape Shield Statute is evidence of the same kind or class as "evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards." OCGA § 24-4-412 (a). The evidence excluded here is not of that kind or class.

Evidence of the identity of the person who impregnated A.O., of his relationship to her, and of her possible motive to lie to protect him is not "evidence which might reflect on the character of the witness without contributing materially

to the issue of the guilt or innocence of the accused." *Harris*, supra, 257 Ga. at 667 (1) (a). It is not evidence of A.O.'s "past sexual behavior." OCGA § 24-4-412 (a). It is not evidence of the same kind or class as the list of examples in the final sentence of OCGA § 24-4-412 (a). It is tangential to evidence of sexual encounters — which the state had introduced into evidence and which was central to its case.

So the issue before us is controlled by *Richardson*, 276 Ga. at 639. As here, the trial court in *Richardson* excluded "non-sexual questioning of the victim about her previous relationship" through which Richardson sought to show a motive to lie, id. at 641 (1), and the Supreme Court reversed. It was undisputed that the defendant and victim had had a sexual encounter. Consent was the issue. The defendant had sought to establish that the victim's hope to rekindle a relationship with another man, and her consequent wish to explain the physical evidence of her encounter with the defendant, motivated her to lie. Here, as in *Richardson*, the excluded evidence touched on a sexual encounter central to the case; but "[t]he proposed inquiry was confined to the existence of a relationship . . . and whether [a] desire [related to] that relationship was a motive to make a false claim of rape." Id.

Because the issue before us is the scope of the statute, it is irrelevant that the Rape Shield Statute "supersedes all evidentiary exceptions[.]" *Logan v. State*, 212 Ga.

App. 734, 735 (1) (a) (442 SE2d 883) (1994). And I agree with the majority that the statutory exception for past acts involving the defendant, OCGA § 24-4-412 (b), is also irrelevant.

Application of the Rape Shield Statute is fact intensive. For example the majority cites *Cox v. State*, 241 Ga. App. 388 (526 SE2d 887) (1999). We held in that case, "Cox's stepdaughter told her physician that she was sexually active with her boyfriend. This evidence regarding the identity of her sexual partner goes directly to the stepdaughter's past sexual behavior and, under the facts of this case, is inadmissible under the Rape Shield Law[.]" Id. at 390 (2). And the trial court in *Cox* did admit the fact that the victim had been sexually active and excluded only the identity of her boyfriend. So *Cox* does appear, at first glance, to be on all fours with this case. But when we upheld the trial court's ruling we emphasized — twice — that we were doing so "under the facts of this case." Id. at 390, 391 (2). The facts of *Cox* were that, while the fact that the victim had been sexually active was admitted, apparently as relevant to the defense that the victim's boyfriend rather than the defendant was the cause of certain physical evidence, the properly-excluded evidence of the identity of her boyfriend would have supported only a rather dubious prior-inconsistent-statement argument. Id. at 390 (2).

7

So in *Cox* evidence of the victim's boyfriend's identity was a substantially gratuitous intrusion. It was "evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused." *Harris*, 257 Ga. at 667 (1) (a) (citation and punctuation omitted). It was not evidence of the kind or class barred by the Rape Shield Statue, OCGA § 24-4-412 (a). In this case, however, evidence of the identity of the person who impregnated A.O. would not materially add to sexual evidence admitted by the state and was essential to Atkins's defense.

**ON MOTION FOR RECONSIDERATION**

McFADDEN, Presiding Judge.

I amend my earlier dissent in light of Atkins's motion for reconsideration. He makes a sound and responsive argument. In upholding the trial court's oral ruling, the majority has adopted a construction of the Rape Shield Statute that renders it so broad as to be constitutionally suspect. That construction should be rejected under the canon of constitutional avoidance. See *Castillo-Solis v. State*, 292 Ga. 755, 760 (2) (740 SE2d 583) (2013); *Haley v. State*, 289 Ga. 515, 521-522 (2) (712 SE2d 838) (2011); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 247-251 (1st ed. 2012). I write again to adopt that argument.

The author of the majority opinion, writing for himself alone, acknowledges in Division 2 (b) that "myriad questions related to the Confrontation Clause and Due Process protections of our constitutions" are raised by "the notion that the act is so broad as to exclude all evidence 'relating to' a victim's past sexual behavior with the sole exception being evidence related to activity which included the defendant." I agree.

Moreover, it's not a "notion." It's a holding. There is no daylight between the

so-called notion from which the majority author attempts to distance himself in Division 2 (b) and the authoritative construction of the Rape Shield Statute in Division 2 (a).

The majority author dismisses those constitutional concerns on the basis that "the evidence sought in this case falls behind the wall erected by the Rape Shield Statute." That is a non sequitur. Constitutions trump statutes; statutes don't trump constitutions.

I also disagree with the majority author's suggestion that those constitutional concerns may be dismissed by distinguishing this case from one where the evidence is "highly probative of innocence [and] directly related to the honesty of a witness." The rights afforded by the Confrontation and Due Process Clauses are not limited to evidence an appellate court deems particularly persuasive.

And in fact, the evidence at issue here is highly probative of innocence and directly related to the honesty of a witness. It may be that A. O.'s testimony was wholly true. But she's told three different stories. It is at least plausible that she falsely accused Atkins in order protect the person who impregnated her and to dissuade Leon Surles from punishing her and that, when that accusation was belied by DNA evidence, she changed her story again to avoid punishment for lying. The ruling before us hobbled Atkins's inquiry into that possibility. So the majority's overbroad reading of the Rape Shield Statute is not merely erroneous and

constitutionally suspect. It may well have perpetuated a terrible injustice.

We should be mindful of an observation by then-Justice, later Chief Justice, Weltner. He was addressing the writ of habeas corpus, but his words have broader application.

> Too much of our limited judicial resources are consumed in looking for real or imagined errors in the convictions of people who are plainly guilty . . . . But we must not become so engrossed in the searching out of procedural faults which sometimes intrude in convicting the guilty that we forget the core purpose of the writ — which is to free the innocent wrongfully deprived of their liberty.

*Valenzuela v. Newsome*, 253 Ga. 793, 796 (4) (325 SE2d 370) (1985).