304 Ga. 240
FINAL COPY

S17G1996. ATKINS v. THE STATE.

MELTON, Presiding Justice.

In Atkins v. State, 342 Ga. App. 422 (803 SE2d 122) (2017), the Court of Appeals affirmed Jerome Atkins's convictions for statutory rape and aggravated child molestation. Thereafter, we granted certiorari and posed the following two questions: (1) whether a victim's prior statements can constitute sufficient corroboration under OCGA § 16-6-3; and (2) whether the defendant was properly prohibited under OCGA § 24-4-412 from seeking testimony regarding the sexual activity that was at issue in the trial. For the reasons set forth below, we find that a victim's prior statements cannot constitute sufficient corroboration under OCGA § 16-6-3, and we reach the second question in a manner limited to the specific facts of this case, as more fully set forth below.

1. As set forth by the Court of Appeals, the facts of this case are as follows:

[I]n November 2010, A. O.'s mother learned that A. O. was

pregnant after taking her to a gynecologist. Following the appointment, A. O.'s mother discussed the pregnancy with A. O., who was thirteen years old at the time. A. O. was asked who fathered the child, and she told her mother that the father was a "boy in the neighborhood." A. O.'s mother called Leon Surles to inform him about the pregnancy. [FN 1: Leon Surles is not A. O.'s biological father but maintains a father-daughter relationship with A. O.] Surles did not believe A. O.'s explanation and, at some point, threatened to give her a lie detector test.

After returning home from school, A. O. called Atkins and his wife and told them she was pregnant by Atkins. Following this conversation, Atkins called Surles and told him that A. O. had called and that she planned to tell Surles she was pregnant with Atkins' child so that she could have an abortion. Atkins denied both paternity and sexual contact with A. O. in his conversation with Surles. [FN 2: Surles testified that in his conversation with Atkins, Atkins stated that A. O. had asked Atkins to have sexual intercourse with her and had asked his wife to perform oral sex on her, but that they had refused A. O.'s requests.] Surles told A. O.'s mother about the call with Atkins.

Surles then spoke with A. O. and threatened to "beat her" and "take her to the police" if she did not tell the truth about the paternity of her child. A. O.'s mother told A. O. that she knew Atkins had fathered the child, and A. O. said that was true. A. O.'s mother then reported the incident to police.

A. O. was interviewed by law enforcement personnel and reported two alleged incidents with Atkins in which he engaged in sexual acts with her. [FN 3: During her initial interview with police on November 20, 2010, A. O. claimed that on August 15, 2010, while sleeping on the floor of Atkins' apartment, she awoke to find Atkins on top of her having sex with her. During her later forensic interview, A. O. alleged for the first time that a prior incident occurred in June or July 2010, with both Atkins and his wife at their previous residence.] A. O. stated that Atkins was the only possible father of her child because she had not been sexually active

immediately prior to or after the August 2010 incident with Atkins.

A. O. had an abortion on November 27, 2010, and a search warrant for the DNA of the fetus was executed. Results of the DNA test showed that Atkins was not the father of A. O.'s child. [FN4: At the time of the abortion, the fetus was approximately eleven weeks into gestation, making the time of conception on or around September 11, 2010.]

Nevertheless, Atkins was indicted on charges of statutory rape and aggravated child molestation. At trial, Atkins maintained his innocence and argued that A. O. identified him as the father to conceal the child's true paternity. Atkins sought to question A. O. about the identity of the true father for the purpose of demonstrating A. O.'s motive to falsely accuse Atkins. The trial court, relying on the Rape Shield Statute, did not allow that line of questioning. A jury found Atkins guilty on both counts. Following the verdict, Atkins moved for a new trial, which the trial court denied.

(Footnote omitted.) Atkins, supra, 342 Ga. App. at 422-424.

2. We first consider whether a victim's prior statements can constitute sufficient corroboration under OCGA § 16-6-3. We find that they cannot.

OCGA § 16-6-3 (a) provides: "A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, *provided that no conviction shall be had for this offense on the unsupported testimony of the victim*." (Emphasis supplied.) In other words, there must be some evidence that corroborates the victim's testimony that the defendant committed the statutory rape. The purpose

3

of the corroboration requirement is to "furnish[ ] the jury [with] a criterion for ascertaining the degree of credit which should be given to the testimony of the injured female." Strickland v. State, 207 Ga. 284, 287 (5) (61 SE2d 118) (1950).

Corroborating evidence may be slight.

> [T]he quantum of corroboration needed in a statutory rape case is not that which is in itself sufficient to convict the accused, but only that amount of *independent* evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury.

(Citation and punctuation omitted; emphasis supplied.) Williamson v. State, 315 Ga. App. 421, 424 (1) (b) (727 SE2d 211) (2012).

Despite recognizing the requirement for *independent* evidence, the Court of Appeals has repeated the proposition in a series of cases that "a child-victim's prior consistent statements, as recounted by third parties to whom such statements were made, can constitute sufficient substantive evidence of corroboration in a statutory rape case." (Citation and punctuation omitted.) Brown v. State, 318 Ga. App. 334, 336 (1) (733 SE2d 863) (2012). See also Byrd v. State, 258 Ga. App. 572, 573 (574 SE2d 655) (2002); Patterson v. State, 233 Ga. App. 776, 776 (1) (505 SE2d 518) (1998); Turner v. State, 223 Ga.

4

App. 448, 450 (2) (477 SE2d 847) (1996); Long v. State, 189 Ga. App. 131, 132

(2) (375 SE2d 274) (1988). These cases appear to trace back to Runion v. State,

180 Ga. App. 440 (349 SE2d 288) (1986). There, in response to a contention

that there was insufficient corroboration of a statutory rape accusation, the Court

of Appeals held:

> "'Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury. If there is any corroborating evidence, we will not go behind the jury and pass on its probative value.' [Cits.]" Tucker v. State, 173 Ga. App. 742 (1) (327 SE2d 852) (1985). The testimony of the victim was supported by that of the nurse who . . . testified to the victim's previous statements inculpatory of appellant. The victim's testimony was also supported by appellant's confession of other acts which would constitute child molestation of the victim. See Hill v. State, 159 Ga. App. 489 (1) (283 SE2d 703) (1981) (evidence that the defendant had slept with the victim on several occasions was sufficient to corroborate the victim's testimony). The victim's testimony in the instant case was sufficiently corroborated, and the evidence did not demand a verdict of acquittal.

Runion, supra, 180 Ga. App. at 440 (1). The statement that the victim's initial

outcry to the nurse was corroborating evidence became the basis for the Court

of Appeals' subsequent rulings. Runion, however, should not have been

interpreted to mean that a victim's prior consistent statement, *standing alone*,

serves as a proper basis to support a conviction for statutory rape. As Runion

5

makes clear, there was *independent* corroborating evidence available in that case to support the statutory rape conviction, namely the defendant's confession of other sexual acts with the victim. This *independent* evidence satisfied the corroboration requirement.

The Court of Appeals has conflated the purpose and value of prior consistent statements, such as the initial outcry of the victim, with that of corroborating evidence providing independent details that support the victim's accusations. We have previously explained the manner in which an initial outcry may be admitted as a prior consistent statement and its purpose once it is in evidence.

> In Cuzzort [v. State, 254 Ga. 745 (334 SE2d 661) (1985)], we held a prior consistent statement [such as an initial outcry by a statutory rape victim] was admissible where the veracity of the declarant was in issue, the declarant was available for trial under oath, and the declarant was subject to cross-examination. Additionally, in Cowart v. State, 294 Ga. 333 (4) (a) (751 SE2d 399) (2013), we re-emphasized that for a witness's veracity to be in issue, the prior consistent statement must predate any allegation of recent fabrication by the witness.

Cobb v. Hart, 295 Ga. 89, 91 (2) (757 SE2d 840) (2014).

Corroborating evidence, however, is in a different category. Corroborating evidence is "[e]vidence that *differs* from but strengthens or confirms what other

evidence shows (esp. that which needs support)." (Emphasis supplied.) Black's

Law Dictionary (10th ed. 2014). The value of a prior consistent statement is that

it does not differ from a subsequent statement. The consistency of a prior

statement of the statutory rape victim makes a subsequent statement that

contains the same details more believable. On the other hand, corroborating

evidence earns its value because it is *independent from* the victim's statement.

It is evidence from an independent source that supports the conclusion that the

defendant committed the statutory rape of the victim. For this fundamental

reason, a prior statement by a victim is not, by definition or otherwise,

corroborating evidence that the statutory rape occurred.[1]

---

[1] This construction of corroborating evidence is in line with criminal law regarding incriminating statements made by an accomplice under both the old and the new Evidence Code. Under the old Evidence Code, former OCGA § 24-4-8 states that "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]" and must be supported by the testimony of another witness or by "corroborating circumstances." Ramirez v. State, 294 Ga. 440, 442 (754 SE2d 325) (2014). OCGA § 24-4-8 was carried over into the new Evidence Code and can be found at OCGA § 24-14-8. Under either Code, a witness cannot "corroborate" his or her own statements.

> [S]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be *independent* of the accomplice testimony and must *directly connect the*

Because we find that a victim's prior consistent statement cannot provide the required corroborating evidence for Atkins's conviction for statutory rape, the next question becomes whether any other evidence in this case satisfies the need for corroboration. There is no sufficient corroborating evidence. The only possible evidence identified by the State is the fact that, on occasion, A. O. spent time at Atkins's house. The State contends that the mere fact that Atkins had access to A. O. should be sufficient corroborating evidence. We disagree, as corroborating evidence must at least "be of 'such a character and quality as *tends* to prove the guilt of the accused by connecting him with the crime.' [Cit.]" (Emphasis supplied.) Timmons v. State, 182 Ga. App. 556, 557 (356 SE2d 523) (1987). The fact that A. O. occasionally visited Atkins's home, standing alone, does not directly connect Atkins with the statutory rape of A. O. as alleged, and

---

*defendant with the crime, or lead to the inference that he is guilty*. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) Threatt v. State, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013). Evidence of an accused's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. See Bradford v. State, 262 Ga. 512, 513 (421 SE2d 523) (1992).

8

the State has presented no other evidence to satisfy the corroboration requirement. Under these circumstances, the State has failed to provide sufficient evidence of Atkins's guilt for the offense of statutory rape, and that conviction must be reversed. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Atkins's conviction for aggravated child molestation, however, which does not have a corroboration requirement, is not affected by this analysis.

3. Atkins contends that the trial court erred by prohibiting him from seeking testimony regarding A. O.'s prior sexual activity. See OCGA § 24-4-412 (a).[2] Specifically, Atkins contends that the trial court prevented him

_____

[2] OCGA § 24-4-412 (a) provides:
In any prosecution for rape in violation of Code Section 16-6-1; aggravated assault with the intent to rape in violation of Code Section 16-5-21; aggravated sodomy or sodomy in violation of Code Section 16-6-2; statutory rape in violation of Code Section 16-6-3; aggravated child molestation or child molestation in violation of Code Section 16-6-4; incest in violation of Code Section 16-6-22; sexual battery in violation of Code Section 16-6-22.1; or aggravated sexual battery in violation of Code Section 16-6-22.2, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior

9

from delving into the identity of the father of the victim's child and to present evidence of A. O.'s motive to lie about Atkins. A close review of the record, however, reveals that Atkins was, in essence, asking to conduct a fishing expedition regarding the identity of all of the victim's sex partners, and the trial court properly did not allow him to do so.

In a "Motion to Admit Exculpatory and Impeachment Evidence," Atkins requested the trial court to admit "evidence regarding the victims [sic] multiple sex partners," arguing that

> [s]uch evidence is not protected by the [R]ape [S]hield [S]tatute. OCGA § 24-4-412 permits evidence of past sexual behaviors if they show a motive for the "alleged victim" to make false allegations or [if it is] offered as an alternative explanation for the physical findings of the doctor. Burris v. State, 204 Ga. App. 806 [(420 SE2d 582)] (1992). Both are present here. [The a]lleged victim's desire to prevent her and her other partners from getting in trouble is a possible motive for her to make false allegations. Additionally, her other partners were the result of the pregnancy she claimed was caused by Mr. Atkins.

Therefore, it is clear that Atkins was requesting to cast a wide net at trial to

_____

> includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

inquire into the victim's entire sexual history with multiple sex partners.

A review of the transcript of the hearing at which the trial court considered Atkins's motion makes this even clearer. The following colloquy occurred between the trial court and defense counsel:

> MS. BICE: Yes, Your Honor. I had filed this motion to admit exculpatory and impeachment evidence. And the basis of that motion is this: When [A. O.] originally reported this, she reported this to the police after she had went [sic] for her annual visit to the doctor's office and discovered that she was pregnant. Ten days after her doctor's visit is when she went to the police department with her mother and reported that she had been raped. And during that interview, as well as the interview at the child advocacy center, she was -- she told both the officer and the interviewer that Jerome Atkins was the father of that fetus and that there was no possibility that it could be anyone else. And for that reason -- well, and the DNA test came back and, of course, showed otherwise. And for that reason, the defense should be able to examine her about who she had been having sex with. . . . The rape shield, there are some cases behind it that show that we can use such evidence to explain another alternative for the physical findings. Well, another alternative for the physical findings is that *she had sex, perhaps with her boyfriend —*
>
> THE COURT: But do you think that —
> MS. BICE: — *or someone else*. And that would also go to her motive.
> THE COURT: Motive for doing what?
> MS. BICE: For making up this story.
> THE COURT: But is there anything about a cross-examination of this alleged victim where — clearly there will be evidence presented to the jury that she found out she was pregnant, that the pregnancy was aborted, and that the fetus was tested and your client is

11

excluded as the father. All of that evidence will be before the jury. And so any logical person can conclude from that that she had sex with somebody else. But does that somebody matter?

MS. BICE: Well, it shows her motive. It would matter. If it was perhaps her boyfriend, she's trying to protect her boyfriend or someone along that nature.

THE COURT: Okay. Anything else you want to argue? I'll just tell you, in the event that there is something else you wish to present, Ms. Bice, I'm not persuaded by that. *Because to the extent that you wish to certainly argue to the jury that she had a motivation for making up the allegation that your client was the father of the child, which the evidence clearly will not support, I think that there can be some arguments made in that regard. But I do not believe that you have offered to the Court any explanation supported by legal authority that would authorize an examination of the alleged victim about her prior sexual history*, because the Court doesn't believe that it's relevant.

MS. BICE: *The only argument that I have* is under <u>Burris v. State</u>, which is basically stating exactly what I have offered to you, is that it can be offered to show an alternative explanation for the physical findings of a doctor, which would be the pregnancy. *So if I was to ask her who she had had sex with*, that would show her — the physical findings of the doctor that she'd had sex with someone other than my client. It shows an alternate source for that injury.

(Punctuation omitted; emphasis supplied.)

Contrary to defense counsel's argument, <u>Burris</u> is distinguishable from this case. In <u>Burris</u>, the trial court prevented the defendant from introducing evidence that the victim previously accused another person of abusing her. The Court of Appeals found this to be error, stating:

[D]efendant did not seek to introduce evidence about the victim's accusation against [another person] for the purpose of showing the child's nonchastity or preoccupation with sex, but rather to explain the medical testimony indicating that the victim had been sodomized and to support his claim that someone other than defendant was the guilty party. In light of the fact that there was some evidence in this case that the victim may have had a strong motive to fabricate her accusation against defendant (i.e. so that she could stay with her grandmother), that the victim had first falsely accused one of her uncles of "bad touching" her so that she would not be forced to leave her grandmother, and that the victim did not initially accuse defendant of molesting her, we cannot say that the exclusion of the evidence showing that the victim had accused [a specific person other than the defendant] of abusing her during this same time period was harmless error. "Evidence enough to raise a reasonable doubt of defendant's guilt in the mind of a juror, not evidence sufficient to convict [the other person], would be adequate to change the outcome of this case. Both the rules of evidence and fairness lead to the result that defendant should be allowed to prove, if he can, that [the victim had also accused another specific person of abusing her] so that defendant's [defense] stands in a more believable light." Henderson v. State, [255 Ga. 687, 689 (1) (341 SE2d 439) (1986)]. Thus, the testimony concerning the victim's accusation about [the person previously accused] was relevant in this case, and the trial court's grant of the State's motion in limine excluding such evidence was reversible error. See Walker v. State, 260 Ga. 737 (1) (399 SE2d 199) (1991); cf. Stancil v. State, [196 Ga. App. 530 (1) (396 SE2d 299) (1990)], where evidence of a prior molestation was not being offered for a limited purpose.

Burris, supra, 204 Ga. App. at 810 (2). Unlike Burris, this is not a case in which

the victim accused a *specific* person other than Atkins of previously abusing her

or where evidence of an actual motive to lie had been presented. Cf. Richardson

13

v. State, 276 Ga. 639 (581 SE2d 528) (2003) (where proffered evidence went to victim's motive to lie to protect non-sexual relationship with her boyfriend, without reference to a sexual relationship). Instead, the defendant wanted to perform a fishing expedition for all possible persons who could have been the father of the victim's child and then backtrack for a motive to lie. The Rape Shield Statute is designed to prevent this kind of broad and unfettered exploration of a victim's past sexual behavior. And, in any event, the defendant in this case *was* allowed to present evidence that the victim had been impregnated by someone other than Atkins. Testimony also showed that the victim originally stated that "a boy in the neighborhood" was the father of the child, and defense counsel was, in fact allowed, to question A. O. about her original statement about this person. Defense counsel even asked A. O. if she would have cared if her mother and father had tracked down the "boy in her neighborhood." So, defense counsel did, in fact, elicit some testimony regarding A. O.'s possible motives.

Now, on appeal, Atkins modifies his argument slightly, focusing more specifically on the idea that the trial court completely prevented him from establishing a motive for the victim to lie. But, in doing so, Atkins tries to

distance himself from his actual request before the trial court — that he be allowed to elicit evidence of the victim's *multiple* partners in hopes of discovering a motive to lie along the way. As discussed above, such a fishing expedition would be improper. Furthermore, to the extent that Atkins wished to explore the victim's motives, the trial court explicitly stated that it would allow Atkins to do so. But, it also ruled that Atkins could not go into the victim's sexual history without some showing that there was specific relevant evidence contained within that history. Given Atkins's request, this ruling was correct.

4. Therefore, as discussed in Division 2, supra, Atkins's conviction for statutory rape must be reversed. His conviction for aggravated child molestation, however, is affirmed, as it is not subject to the corroboration requirement of OCGA § 16-6-3 (a).

Judgment affirmed in part and reversed in part. Hines, C. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, JJ., and Judge Robert E. Flournoy III concur. Peterson, J., disqualified.

Decided August 20, 2018.

Certiorari to the Court of Appeals of Georgia — 342 Ga. App. 422.

Christina R. Cribbs, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys, for appellee.