In the Supreme Court of Georgia

Decided: February 4, 2019

S18G0365. WHITE v. THE STATE.

MELTON, Chief Justice.

This case concerns the proper statutory interpretation of OCGA § 24-4-412, Georgia's Rape Shield Statute, which provides:

(a) In any prosecution for rape in violation of Code Section 16-6-1; aggravated assault with the intent to rape in violation of Code Section 16-5-21; aggravated sodomy or sodomy in violation of Code Section 16-6-2; statutory rape in violation of Code Section 16-6-3; aggravated child molestation or child molestation in violation of Code Section 16-6-4; incest in violation of Code Section 16-6-22; sexual battery in violation of Code Section 16-6-22.1; or aggravated sexual battery in violation of Code Section 16-6-22.2, *evidence relating to the past sexual behavior of the complaining witness shall not be admissible*, either as direct evidence or on cross-examination of the complaining witness or other witnesses, *except as provided in this Code section*. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

(b) . . . [E]vidence relating to the past sexual behavior of the complaining witness may be introduced if the court, following the

procedure described in subsection (c) of this Code section, finds that *the past sexual behavior directly involved the participation of the accused and* finds that *the evidence* expected to be introduced *supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution*.

(c) The procedure for introducing evidence as described in subsection (b) of this Code section shall be as follows:

(1) At the time the *defense* seeks to introduce evidence which would be covered by subsection (b) of this Code section, the *defense* shall notify the court of such intent, whereupon the court shall conduct an in camera hearing to examine the accused's offer of proof;

(2) At the conclusion of the hearing, if the court finds that any of the evidence introduced at the hearing is admissible under subsection (b) of this Code section or is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence, the court shall by order state what evidence may be introduced by the *defense* at the trial of the case and in what manner the evidence may be introduced; and

(3) The *defense* may then introduce evidence pursuant to the order of the court.

(Emphasis supplied).

In this case, on November 21, 2014, Charles White was found guilty of three counts of rape, one count of statutory rape, ten counts of child molestation,

2

three counts of aggravated sodomy, three counts of incest, and one count of enticing a child for indecent purposes in connection with incidents involving three victims, including S.M., who was a member of White's extended family. The information that led to White's indictment for these sex crimes came to light after twelve-year-old S.M. had been accused of, and later admitted to, molesting her two younger stepsisters.[1] During the course of being questioned about her own sexual misconduct, S.M. disclosed that she had been sexually abused by White since she was five years old and that White had done things to her that were similar to the things that she had done to her stepsisters. Prior to White's trial, S.M. was adjudicated delinquent in juvenile court for having committed sexual batteries against her two stepsisters.

White filed a pretrial motion in limine to have evidence of S.M.'s prior sexual acts excluded from his trial, arguing that the admission of the evidence would have been more prejudicial to White than probative of any issue at trial. But the trial court denied White's motion, and, at trial, without further objection from White's counsel, the State briefly elicited testimony from S.M. regarding

---

[1] The stepsisters whom S.M. molested were *not* White's other two victims.

her prior sexual misconduct and her delinquency adjudication. The State also presented expert testimony in which the expert noted briefly that, in general, young children who act sexually toward other children may be exhibiting behavior consistent with having been victims of sexual abuse. In addition to this evidence, White's other two victims testified directly about the abuse that they claimed that they had been subjected to by White, and the family members to whom the victims had spoken about the abuse testified as well.

Following his convictions, White filed a motion for new trial on November 25, 2014, which he amended on September 19, 2016, arguing for the first time that the trial court committed plain error[2] by admitting into evidence at trial testimony regarding S.M.'s sexual history – specifically, her sexual misconduct – in violation of Georgia's Rape Shield Statute. The trial court denied the motion, and White appealed to the Court of Appeals, continuing to argue that the trial court erred in allowing the State to introduce evidence of

---

[2] White failed to object at trial to the admission of the testimony relating to S.M.'s sexual history on the basis that he later asserted in his amended motion for new trial. He therefore concedes that the analysis of any issue relating to the alleged error in the admission of the evidence is limited to a review for "plain error[ ] affecting substantial rights." OCGA § 24-1-103 (d).

4

S.M.'s prior sexual misconduct. However, the Court of Appeals affirmed White's convictions in an unpublished opinion, finding that Georgia's Rape Shield Statute could not be invoked by a defendant to prevent a victim from offering evidence that was otherwise relevant to the case. In light of this ruling from the Court of Appeals, we granted White's petition for a writ of certiorari to resolve the following questions:

> (1) Can a defendant invoke OCGA § 24-4-412 in order to prohibit the admission of evidence of a witness's past sexual behavior offered by the State? Compare, e.g., Orengo v. State, 339 Ga. App. 117 (10) (793 SE2d 466) (2016) ("'the Rape Shield [S]tatute . . . cannot be invoked by a defendant to prevent a victim from offering otherwise relevant evidence' (citation omitted)") with, e.g., Johnson v. State, 146 Ga. App. 277 (2) (246 SE2d 363) (1978) (holding that a defendant may, by proper and timely objection, prevent the State from introducing evidence excluded by the Rape Shield Statute).

> (2) Is evidence of a complaining witness's past sexual behavior admissible if that evidence is relevant to an issue other than consent? Compare, e.g., Warner v. State, 277 Ga. App. 421 (2) (626 SE2d 620) (2006), with, e.g., Herndon v. State, 232 Ga. App. 129 (2) (499 SE2d 918) (1998).

> (3) Did the trial court improperly admit evidence of the complaining witness's past sexual behavior, and, if so, was any such error harmless?

For the reasons set forth below, we determine that (1) yes, a defendant can invoke the Rape Shield Statute to prohibit the admission of evidence of a

5

witness's past sexual behavior offered by the State where such offered evidence is inadmissible pursuant to the terms of the Rape Shield Statute; (2) no, because evidence of a complaining witness's past sexual behavior is only admissible under the Rape Shield Statute if that evidence is relevant to the issue of consent; and (3) the trial court did improperly admit evidence of the complaining witness's past sexual behavior in this case, but the admission of this evidence did not amount to plain error requiring reversal of White's convictions. Accordingly, we ultimately affirm the judgment of the Court of Appeals, though we reject the Court of Appeals' reasoning.

1. In order to determine whether a defendant can invoke OCGA § 24-4-412 to prohibit the admission of evidence of a witness's past sexual behavior offered by the State, we examine the plain language of the statute, presuming

> that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . . [And] if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

6

(Citations and punctuation omitted.) <u>Deal v. Coleman</u>, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013).

With these principles in mind, a natural reading of the text of OCGA § 24-4-412 indicates that evidence of a complaining witness's past sexual behavior may not be introduced by any party at a trial involving a prosecution for certain sexual crimes unless such evidence falls under the one specific exception contained in the statute itself. There is nothing ambiguous about the language in OCGA § 24-4-412 (a) stating that

> [i]n any prosecution for [the sex crimes listed in the Rape Shield Statute], evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section.

Thus, unless there is a specific exception contained in OCGA § 24-4-412 indicating that the statute only applies to evidence introduced by criminal defendants and not to evidence introduced by the State, the evidentiary restrictions contained in the statute apply equally to both the State and defendants "[i]n any prosecution" for the sex crimes to which the Rape Shield Statute applies. The only exception to the evidentiary restrictions created by the Rape Shield Statute is contained in OCGA § 24-4-412 (b), which establishes

that a *defendant*[3] may introduce

> evidence relating to the past sexual behavior of the complaining witness . . . if . . . the past sexual behavior directly involved the participation of the accused and . . . the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

There is no additional exception in the Rape Shield Statute that would exempt the State from its application. Evidence of a complaining witness's past sexual history that falls outside of the one specific exception contained in OCGA § 24-4-412 is inadmissible in any prosecution to which the Rape Shield Statute applies and may not be introduced by either party as "direct evidence or on cross-examination of the complaining witness or other witnesses." OCGA § 24-4-412 (a).

While the exception under the Rape Shield Statute applies only to certain evidence offered by defendants, this does not mean that the evidentiary restrictions contained in the statute would also apply only to defendants. A specific carve-out does not usually serve to restrict the application of the broader

---

[3] "The procedure [set forth in OCGA § 24-4-412 (c)] for introducing evidence as described in subsection (b)" makes it clear – repeatedly – that only the "defense" can use that exception.

8

general provisions. Regardless of the State's possible desire to introduce evidence of a complaining witness's past sexual history to support its theory of a case against a defendant (as was the case here) or for some other purpose, there is simply no additional exception written into the statute to allow the State to do so, and this Court cannot write such an exception into the statute for the State. State v. Fielden, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.").

Our conclusion in this regard is supported by the fact that, when the General Assembly adopted Georgia's new Evidence Code in 2011, which became effective in 2013, it did not adopt the federal counterpart to Georgia's Rape Shield statute. Compare former OCGA § 24-2-3 with OCGA § 24-4-412 (containing nearly identical language without either statute containing any exception for the State to be excluded from its requirements).[4] Specifically,

---

[4] The Rape Shield Statute was amended in 2005 and 2013 to expand the range of sex crimes to which the statute is applicable. See, e.g., Abdulkadir v. State, 279 Ga. 122 (610 SE2d 50) (2005) (version of Rape Shield Statute that existed prior to 2005 amendment applied only to rape cases, and Court of Appeals cases indicating that old version of statute applied to child molestation cases at that time were disapproved); Robinson v. State, 308 Ga. App. 562 (708

9

despite the fact that OCGA § 24-4-412 of the new Evidence Code has a federal

counterpart in Federal Rule of Evidence 412, the Georgia statute contains no

exception for the State to be excluded from its requirements, whereas the federal

rule *does* contain such an exception for the prosecution. Pursuant to Federal

Rule 412:

> The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition. . . . The court may admit the following evidence in a criminal case: . . . evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent *or if offered by the prosecutor*.

(Emphasis supplied.) Fed. R. Evid. 412 (a) and (b) (1) (B).[5] See also United

States v. Roy, 781 F3d 416 (I) (B) (8th Cir. 2015) (acknowledging one of the

exceptions under Federal Rule of Evidence 412, which includes evidence

offered by prosecutors and the procedures that a party must follow to have

sexual history evidence admitted at trial).

SE2d 303) (2011) (version of Rape Shield Statute that existed prior to 2013 amendment applied to aggravated child molestation cases, but not to child molestation cases).

[5] Federal Rule of Evidence 412 (c) does not limit the procedures for admitting evidence of a victim's sexual behavior to only the defense.

This distinction between Federal Rule of Evidence 412 and OCGA § 24-4-412 is significant to our analysis because

> [o]ur new Evidence Code was based in large part on the Federal Rules of Evidence. And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance. . . . [However,] [w]here a provision of the new Evidence Code *differs* in substance from the counterpart federal rule, as interpreted by federal courts, we must correspondingly presume that the General Assembly meant the Georgia provision to be different.

(Footnote and citation omitted; emphasis in original.) Parker v. State, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015).

Here, Georgia's Rape Shield Statute differs in substance from its federal counterpart in that the Georgia General Assembly specifically declined to include an exception for the State in OCGA § 24-4-412 of our new Evidence Code even though such an exception exists for prosecutors under Federal Rule of Evidence 412 (b) (1) (B).[6] In light of this difference between the two statutes,

---

[6] As shown in the Advisory Committee notes on the proposed 1994 amendment to Federal Rule of Evidence 412:

> Under the exception in subdivision (b)(1)(B), evidence of specific instances of sexual behavior with respect to the person whose sexual misconduct is alleged is admissible if offered to prove

we must "presume that the General Assembly meant the Georgia provision to be different." Id. The Georgia provision is different, as its plain language establishes no exception within the law that would allow the State to introduce evidence of a complaining witness's past sexual history in a prosecution in which the Rape Shield Statute is applicable. Accordingly, in cases where the statute applies, a defendant is authorized to invoke Georgia's Rape Shield law in order to prohibit the admission of evidence of a witness's past sexual behavior offered by the State.

2. Additionally, the plain language of OCGA § 24-4-412 does not support the conclusion that evidence of a complaining witness's past sexual behavior would be admissible if it were relevant to an issue other than consent. As

consent, or offered by the prosecution. Admissible pursuant to this exception might be evidence of prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expressed an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving the specific accused. In a prosecution for child sexual abuse, for example, evidence of uncharged sexual activity between the accused and the alleged victim offered by the prosecution may be admissible pursuant to Rule 404(b) to show a pattern of behavior. Evidence relating to the victim's alleged sexual predisposition is not admissible pursuant to this exception.

explained in Division 1, supra, the sole exception to the evidentiary restrictions contained in the Rape Shield Statute allows a defendant to introduce evidence of the complaining witness's past sexual behavior where such activities directly involved the defendant and supports an inference that the defendant "could have reasonably believed that the complaining witness *consented* to the conduct complained of in the prosecution." (Emphasis supplied.) OCGA § 24-4-412 (b). There is no exception written into the statute for any party to introduce evidence of a complaining witness's sexual behavior that is "otherwise relevant" (see Demetrios v. State, 246 Ga. App. 506 (541 SE2d 83) (2000)) but that falls outside of the scope of this sole statutory exception. And the Court of Appeals was not authorized to write a "relevance" exception into the statute. See State v. Fielden, supra, 280 Ga. at 448. The cases purporting to allow a relevance exception to the Rape Shield Statute for the admission into evidence of a complaining witness's past sexual behavior beyond that contained in OCGA § 24-4-412 (b) are hereby overruled to the extent that they do so.[7] See

_____

[7] We acknowledge that good policy reasons may exist to allow the State to introduce evidence of a victim's past sexual behavior in the manner that a federal prosecutor may do so pursuant to Federal Rule Evidence 412. For instance, as was the case here, the introduction of S.M.'s prior sexual behavior

Bill v. State, 341 Ga. App. 340 (1) (a) (799 SE2d 28) (2017);  Orengo, supra,

---

was not to further victimize her, but to expose potential wrongdoing by White. Federal Rule of Evidence 412 allows for potential wrongdoing by a defendant to be exposed in ways that Georgia's Rape Shield Statute does not. For example, in the context of a federal prosecution for a sex crime in which evidence existed to show that the victim had been involved sexually with the defendant in the past in a manner that was in some way relevant to proving the crimes at issue in the defendant's trial, Federal Rule of Evidence  412 would allow the prosecutor to bring forth that evidence after following the appropriate procedures. See Fed. R. Evid. 412 (b) (1) (B) ("The court may admit . . . evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct . . . if offered by the prosecutor."). However, the plain language of Georgia's Rape Shield law would not allow for the admission of such evidence because the State cannot introduce evidence of a victim's past sexual behavior. But see, e.g., Orengo, supra,  339 Ga. App. at 128 (10); Warner, supra, 277 Ga. App. at 424 (2); Demetrios, supra, 246 Ga. App. at 514 (7) (c). But regardless of policy reasons to allow the State to introduce evidence of a victim's past sexual behavior in certain circumstances, we cannot rewrite Georgia's Rape Shield law to allow the State to do so. We must leave that job to the General Assembly. See State v. Fielden, supra, 280 Ga. at 448. Furthermore, we offer no opinion about the circumstances under which OCGA § 24-4-412 would have to yield to due process concerns with respect to the exclusion of evidence of a victim's past sexual behavior in a criminal defendant's trial. Compare Fed. R. Evid. 412 (b) (1) (C) (expressly recognizing that, in criminal cases, an exception exists for the admission of evidence of a victim's past sexual behavior where the exclusion of such evidence "would violate the defendant's constitutional rights."). See also Atkins v. State, 342 Ga. App. 422 (2) (b) (803 SE2d 122) (2017), reversed in part on other grounds, 304 Ga. 240 (818 SE2d 567) (2018). We also offer no opinion in this case on the question whether the admissibility of a victim's prior false accusation of alleged sexual misconduct may or may not be impacted by the Rape Shield Statute. See State v. Burns (Case No. S18C1354; cert. granted November 15, 2018).

14

339 Ga. App. at 128 (10); <u>Futch v. State</u>, 326 Ga. App. 394 (3) (756 SE2d 629)

(2014), overruled in part on other grounds by <u>Willis v. State</u>, – Ga. – (11) (a) n.3

(Case No. S18P0915; decided October 22, 2018); <u>Tidwell v. State</u>, 306 Ga. App.

307 (5) (701 SE2d 920) (2010); <u>Warner</u>, supra, 277 Ga. App. at 424 (2); <u>Payne</u>

<u>v. State</u>, 267 Ga. App. 498, 500-501 (1) (600 SE2d 422) (2004); <u>Demetrios</u>,

supra, 246 Ga. App. at 514 (7) (c).[8]

3. In light of our discussion in Divisions 1 and 2, supra, we conclude that

the trial court erred by admitting into evidence testimony regarding S.M.'s

sexual behavior. However, the question remains as to whether such error

---

[8] Now that Georgia's Rape Shield Statute has been amended to apply to child molestation cases, we must also note that prior case law from the Court of Appeals that was decided based on trials that began before the January 1, 2013 amendment became effective and that allowed evidence of a child's past sexual behavior to be admitted at trial has been superseded by the current version of the statute. See, e.g., <u>Hall v. State</u>, 320 Ga. App. 48, 49-50 (739 SE2d 61) (2013); <u>Chambers v. State</u>, 213 Ga. App. 284, 286 (1) (b) (444 SE2d 833) (1994). To the extent that these cases and their progeny can be read to support the erroneous proposition that evidence of a victim's past sexual behavior could be admissible under the Rape Shield Statute if relevant to an issue other than consent, they are hereby overruled. See, e.g., <u>Sutton v. State</u>, 336 Ga. App. 884, 885 (1) (785 SE2d 421) (2016) (stating that evidence of child's past sexual history may be admissible "to show other possible causes for behavioral symptoms"); <u>Hall</u>, supra; <u>Mooney v. State</u>, 266 Ga. App. 587 (5) (597 SE2d 589) (2004); <u>Williams v. State</u>, 263 Ga. App. 597 (1) (588 SE2d 790) (2003); <u>Chambers</u>, supra.

amounted to "plain error[ ] affecting substantial rights." OCGA § 24-1-103 (d).

As explained more fully below, we conclude that it does not.

> In order to show plain error:
>
> First, there must be an error or defect — some sort of "deviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Citation, punctuation, and emphasis omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). See also Gates v. State, 298 Ga. 324 (3) (781 SE2d 772) (2016) (holding that the Kelly plain error test for alleged instructional errors also applies to evidentiary errors under OCGA 24-1-103 (d)).

Here, there was an error that was not affirmatively waived by White with respect to the admission of testimony at his trial relating to S.M.'s past sexual behavior. The error regarding the admission of this evidence was also a clear or obvious one in light of the plain language of the statute, and, as explained more

16

fully below, older and binding case law from the Court of Appeals that properly interpreted the Rape Shield Statute and that the trial court was bound to follow.

In its older case law, the Court of Appeals properly recognized that, by its terms, Georgia's Rape Shield Statute applied to exclude evidence offered by the State. See, e.g., Johnson v. State, 146 Ga. App. 277, 280 (2) (246 SE2d 363) (1978) ("Since there is no method by which the state can properly introduce . . . proscribed evidence [under the Rape Shield Statute], a defendant may, by proper and timely objection, prevent the admission of such evidence. . . . [T]he exceptions listed in [the Rape Shield Statute] are exclusive and . . . those exceptions are provided solely for the benefit of the defendant who, by proper and timely objection, may prevent the state from introducing the evidence excluded by the statute."); Herndon, supra, 232 Ga. App. at 132 (2) (trial court erred by allowing State to introduce evidence at trial that was inadmissible under the Rape Shield Statute). However, the Court of Appeals abandoned this correct line of precedent, without any reasoning and without citing or expressly overruling these prior authorities, in Demetrios, supra – a case in which the Rape Shield Statute was "not implicated since the testimony [of the victim in the case] was regarding prior physical abuse, not sexual abuse." Id. at 514 (7) (c).

Despite the fact that the Court of Appeals acknowledged in Demetrios that the case did not even implicate the Rape Shield Statute, the court nevertheless went on to state in the opinion, without citation to authority, that the Rape Shield Statute "cannot be invoked by a defendant to prevent a victim from offering otherwise relevant evidence." Id.

The Court of Appeals continued to follow this incorrect reasoning from Demetrios in Warner, supra, 277 Ga. App. at 424 (2) n.17 (quoting the aforementioned alternative holding from Demetrios and concluding that trial court did not abuse its discretion by allowing victim to testify that she had not had sex for five months prior to alleged rape by defendant) and Orengo, supra, 339 Ga. App. at 129 (10) (trial court did not abuse its discretion by allowing State to elicit testimony from victim regarding her sexual activity in the few days around the time of the alleged rape because "'the Rape Shield [S]tatute . . . cannot be invoked by a defendant to prevent a victim from offering otherwise relevant evidence' [Demetrios, supra, 246 Ga. App. at 514 (7) (c)])"). However, again, the Court of Appeals did not, in either of those cases, address or overrule its prior authority indicating that a defendant *can* invoke the Rape Shield Statute to prevent the State from introducing evidence that is inadmissible under the

18

Rape Shield law.

Thus, the Court of Appeals created two competing lines of cases that stood for opposing propositions with respect to the application of Georgia's Rape Shield Statute to evidence introduced by the State. This raises another issue that the Court of Appeals failed to properly resolve. Specifically, when faced with these competing lines of authority from its own court, the Court of Appeals was obligated to continue to rely on the *older* precedent from that court until such time as the older law was properly overruled by that court or reversed or overruled by this Court:

> [T]he older decisions of [the Court of Appeals] are binding on [panels of that] court until reversed or overruled by the Supreme Court or overruled by [the Court of Appeals, and the Court of Appeals] must adhere to the authority of those cases which [it] think[s] state the correct principle of law. Anything to the contrary which may have been ruled by [panels of the Court of Appeals] in [more recent decisions] must yield to the older authorities [from that court].

McKibben v. State, 88 Ga. App. 466, 474 (1) (77 SE2d 86) (1953). See also YMCA v. Bailey, 112 Ga. App. 684, 705 (14) (146 SE2d 324) (1965) ("[I]f there [is] a conflict [between the holdings in two Court of Appeals cases], then [the newer case] must yield to the older decision."); Temple v. Hillegass, 344

Ga. App. 454 (810 SE2d 625) (2018) (outlining manner in which cases can be overruled by Court of Appeals pursuant to mandates set forth in OCGA § 15-3-1 (d) and the Court of Appeals' own Rule 33.3).[9] See also Bryan A. Garner, et al., The Law of Judicial Precedent 303 (2016) ("When an intermediate appellate court finds discordant opinions among its own precedents . . . an *earlier* horizontal precedent nearly always controls.") (emphasis supplied; footnote omitted).[10]

---

[9] It is undisputed that the Court of Appeals has not overruled its prior authority that properly interpreted Georgia's Rape Shield Statute, as only three (rather than all) judges on the court participated in the decisions that diverged from this properly decided prior case law, and the more recent cases did not even cite to the prior controlling case law. See Stephen Louis A. Dillard, Open Chambers: Demystifying the Inner Workings and Culture of the Georgia Court of Appeals, 65 Mercer L. Rev. 831, 853 (2014) (explaining that, by internal court rules, overruling of precedent required the participation of all 12 (now 15) judges, which was consistent with statutory law that was in effect at that time as well (see former OCGA § 15-3-1 (d)). Although the procedure for overruling cases has changed for the Court of Appeals in recent years (see Court of Appeals Rule 33.3 and the current version of OCGA § 15-3-1 (d)), it is still undisputed that the Court of Appeals never overruled its prior case law holding that evidence of a victim's prior sexual behavior cannot be introduced by the State under Georgia's Rape Shield Statute.

[10] The rule that applies to an intermediate appellate court such as the Georgia Court of Appeals when examining its own discordant decisions should *not* be confused with the rule that applies to a jurisdiction's highest court such as the Georgia Supreme Court when discord may exist between older and newer precedents of that high court. "When a high court finds discordant opinions

But the Court of Appeals here did not follow or overrule its binding older precedents. Instead, it followed the holdings in the erroneously decided and non-binding decisions in <u>Demetrios</u>, supra, <u>Warner</u>, supra, and <u>Orengo</u>, supra. However, because these more recent decisions from the Court of Appeals run contrary to the plain language of the Rape Shield Statute, and because these cases must yield to the older case law that has not been overruled and that is based on a proper interpretation of the Rape Shield Statute, the Court of Appeals erred in relying on its own more recent cases. These more recent cases from the

among its own horizontal precedents . . . [the court] generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding." (Punctuation omitted; emphasis supplied.) The Law of Judicial Precedent, supra, at 300. See also <u>Houston v. Lowes of Savannah, Inc.</u>, 235 Ga. 201, 203 (219 SE2d 115) (1975) (When faced with its own conflicting decisions, the Georgia Supreme Court's more recent case was controlling, because the case decided by this Court "later in time is the more persuasive decision."). The rule for the Court of Appeals differs from the one that applies to a high court because, in general, "one panel [of an intermediate appellate court] may not overrule the decision of a prior panel . . . in the absence of an intervening contrary or superseding decision by [the intermediate] court sitting en banc or by [a higher court]." <u>Billiot v. Puckett</u>, 135 F3d 311, 316 (II) (5th Cir. 1998). The intermediate appellate court must overrule its prior conflicting holdings with an appropriate body of judges doing so; otherwise the prior authorities remain binding and controlling precedent. Courts of last resort, however, have the power to tacitly overrule prior conflicting case law through their more recent proclamations. See The Law of Judicial Precedent, supra, at 300.

21

Court of Appeals holding that a defendant may not invoke the Rape Shield Statute to prohibit the admission of evidence of a witness's past sexual behavior offered by the State were wrongly decided. Accordingly, they must be overruled to the extent that they stand for this erroneous proposition. See Demetrios, supra, Warner, supra, and Orengo, supra.

The prior case law from the Court of Appeals that properly interpreted the Rape Shield Statute was specifically brought to the trial court's attention in White's amended motion for new trial. See Herndon, supra. The trial court's error in failing to follow these binding older precedents from the Court of Appeals was a clear or obvious one. See Cheddersingh v. State, 290 Ga. 680, 685 (2) n.5 (724 SE2d 366) (2012) ("For an error to be obvious for purposes of plain error review, 'it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule.'") (citations and emphasis omitted). See also McKibben, supra, 88 Ga. App. at 474 (1) ("[T]he older decisions of [the Court of Appeals] are binding . . . until reversed or overruled by the Supreme Court or overruled by [the Court of Appeals]"); YMCA, supra, 112 Ga. App. at  705 (14) ("[I]f there be a conflict [between the holdings in Court of Appeals cases], then [the newer case] must yield to the older

22

decision").

However, we do not find that the error here "likely affected" the outcome of the trial court proceedings. See Kelly, supra, 290 Ga. at 33 (2) (a). Indeed, while the improperly introduced evidence from the State in this case was potentially prejudicial to White (as evidence introduced by the State in a criminal prosecution against a defendant generally would be), defense counsel was able to mitigate this potential prejudice by using the evidence of S.M.'s prior sexual behavior to White's advantage during his cross-examination of S.M. and in his closing argument. Specifically, defense counsel used the evidence of S.M.'s prior sexual behavior to support her theory that S.M. only made the accusations against White because S.M. herself was "in a lot of trouble for molesting children." In fact, defense counsel used the evidence of S.M.'s prior sexual behavior much more than the State used the evidence in its case-in-chief or closing argument. In this regard, defense counsel used the evidence to attack S.M.'s credibility both in White's case-in-chief and in her closing argument in ways that likely benefitted White much more than the erroneous admission of the evidence harmed him. Specifically, defense counsel emphasized during her cross-examination of S.M. and S.M.'s father that S.M.

23

first denied that White had abused her and that she only changed her story to say that White had molested her after it was revealed that she had molested her stepsisters. Further, during her cross-examination of S.M., the defense delved into specific details about the manner in which S.M. had molested her stepsisters, whereas the State did not bring up any of those specific details. The defense further emphasized that S.M. had received an ostensibly light sentence of house arrest and probation after admitting to her crimes and being adjudicated delinquent. The State's reference to S.M.'s prior sexual behavior and the expert testimony that referenced children being more likely to molest others if they themselves had been molested, on the other hand, were minimal, and the State did not emphasize this theory at all in its closing argument. The State's questioning of its expert on this issue was limited to one question during its redirect examination, and defense counsel was able to mitigate the potential impact of this testimony by eliciting testimony that a child acting sexually could also be consistent with the child *not* having been molested. Under such circumstances, we find that, while the introduction of evidence relating to S.M.'s prior sexual behavior was erroneous, that error did not likely affect the

outcome in White's case.[11] See, e.g., Smith v. State, 299 Ga. 424, 431-432 (2) (c) and (d) (788 SE2d 433) (2016) (erroneous introduction of evidence about defendant's tattoos was harmless, as questions about tattoos "elicited evidence that benefitted Appellant, which he otherwise might not have been able to introduce" . . . and "aspects of the evidence appear[ed] to have aided his defense"). Accordingly, White cannot show that the admission of the evidence amounted to "plain error[ ] affecting substantial rights." OCGA § 24-1-103 (d). See also Smith, supra, 299 Ga. at 431-432 (2) (c) and (d); Kelly, supra, 290 Ga. at 33 (2) (a). ("Satisfying all four prongs of [the plain error] standard is difficult, as it should be") (citation and punctuation omitted).[12]

---

[11] We also note that the error in the admission of evidence about S.M.'s sexual behavior did not affect the evidence of White's guilt regarding the other two victims, who testified, like S.M., about the horrific abuse that White inflicted on them.

[12] The special concurrence suggests that the obvious evidentiary error in this case may actually have caused harm to White by likely affecting the outcome of his trial, which in other words means it is likely that if the error had not occurred, the jury would have found White *not* guilty. The special concurrence argues that the Court nonetheless should decline to correct the error because it did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." Some of us find it difficult to imagine a criminal case in which the fairness, integrity, and public reputation of judicial proceedings would not be seriously affected by a court's doing nothing about an obvious evidentiary error after the court has held (or assumed) that the error likely

Judgment affirmed. All the Justices concur, except Bethel, J., who concurs specially. Ellington, J., disqualified.

---

resulted in the defendant going to prison rather than going free. The special concurrence cites no case from Georgia (or elsewhere) in which a court has applied the plain error standard in this way. In any event, because we have concluded that the obvious error in this case did not likely affect the outcome of White's trial, we need not decide whether it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."

S18G0365. WHITE v. THE STATE.

BETHEL, J., concurring.

Although I agree with the outcome reached in this case, I find myself unsettled and uneasy with the majority's determination, in Division 3, that the error here did not likely affect the outcome of the trial court proceedings.[1] While I cannot categorically say that determination is incorrect, I am troubled by the suggestion that defense counsel's skillful handling of the improperly introduced evidenced sufficiently mitigated the prejudice of the evidence. I fully concur with the balance of the majority opinion, but because White failed to demonstrate that the error resulted in an outcome that seriously affected the fairness, integrity, or public reputation of judicial proceedings, I would base the Court's conclusion in this case on White's failure to satisfy that prong of the four-part plain-error analysis.[2]

---

[1] I agree with the majority's analysis of the first two prongs of plain error.

[2] Indeed, the Supreme Court of the United States has employed this approach in criminal cases. See, e.g., United States v. Cotton, 535 U. S. 625, 632-633 (122 SCt 1781, 152 LE2d 860) (2002) ("We need not resolve . . . [the third prong of plain-error review] because even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial

Of course, plain-error review requires satisfaction of all four prongs of the now-familiar test. See United States v. Olano, 507 U. S. 725, 732-736 (113 SCt 1170, 123 LE2d 508) (1993); Puckett v. United States, 556 U. S. 129 (II)(a) (129 SCt 1423, 173 LE2d 266) (2009); State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Because each prong must be satisfied, it follows that a subset of cases will arise where this Court does not reverse a clear or obvious error which likely affected the outcome of the court proceeding because the error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Analysis under the fourth prong is "case-specific and fact intensive." Puckett, 566 U. S. at 142. Plain error review exists, ultimately, to allow appellate courts to correct errors in "those circumstances in which a miscarriage of justice would otherwise result." (Citation omitted.) Olano, 507 U. S. at 736.

My doubts about the majority's analysis stem from my view of the case in the absence of the improperly admitted evidence. The majority is entirely correct in its assessment of defense counsel's efforts to mitigate the impact of the evidence at issue. However, in the absence of that evidence, I cannot say

proceedings.").

2

with confidence that a jury would have returned the same verdict in regard to the allegations levied against White by S.M.

What I can say with confidence is that White's conviction does not seriously affect the fairness, integrity, or public reputation of judicial proceedings nor does upholding the conviction risk a miscarriage of justice. Georgia's version of the Rape Shield Statute exists for the protection of the witness. Nothing about the admission of the evidence here threatened *White's* right to a fair or constitutional trial.[3] The admission of the evidence did not

---

[3] While the majority's suggestion that plain-error analysis be reduced to a three-prong test with respect to evidentiary matters in criminal cases is understandable, I do not agree. Of course, when the error in question insults a defendant's constitutional rights, I am hard-pressed to imagine a scenario where such error would not constitute a miscarriage of our notion of justice. However, in regard to non-constitutional matters, plain-error analysis is clearly subject to a *four*-prong test. This test has been explicitly adopted through our case law, see Kelly, 290 Ga. at 33 (2) (a), and was implicitly adopted by the General Assembly in 2013 when it enacted our new Evidence Code. See Gates v. State, 298 Ga. 324, 326-327 (2) (781 SE2d 772) (2016) (explaining that Georgia's new Evidence Code, when it borrows from the Federal Rules, incorporates the analysis of the federal courts at the time of the Georgia rule's adoption). And the Supreme Court of the United States has made clear that the third and fourth prongs of plain-error analysis are distinct prongs, one not to be subsumed into the other. See Olano, 507 U. S. at 732 ("[T]he decision to correct the forfeited error [is] within the sound discretion of the [appellate court], and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (punctuation omitted)). Otherwise, the discretion afforded appellate courts when evaluating claims of plain error would be "illusory." Olano, 507 U. S. at 737.

undermine the credibility of the jury verdict. Nor is there any persuasive argument that allowing this conviction to stand would impugn the public reputation of the judicial process. In short, I see no compelling reason why we should exercise our discretion under the fourth prong of plain-error review.