**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 8, 2020**

# In the Court of Appeals of Georgia

A20A1554. STEVENS v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Brandon Stevens was convicted of two counts of aggravated child molestation, child molestation, statutory rape, and enticing a child for indecent purposes. He appeals his convictions, arguing that the trial court erred in giving a coercive jury charge, but we hold that the charge was not coercive. He argues that the trial court erred by charging the entire aggravated child molestation statute, but we hold that any error in this regard was not harmful. He argues that the trial court erred by prohibiting him from questioning one of the victims about her allegations of molestation committed by other parties, but we hold that the evidence was not admissible, so the trial court did not err. Finally, he argues that trial counsel was

ineffective, but we hold that he has not shown that trial counsel performed deficiently. So we affirm.

1. *Factual background.*

Viewed in the light most favorable to the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence showed that Stevens was convicted for committing acts against his two cousins, D. G. and C. G., who are sisters. After D. G. and C. G. revealed to each other that Stevens had committed similar acts against them, D. G. and C. G. decided that D. G. would confront Stevens.

D. G. asked Stevens to meet her outside their grandmother's house and she confronted him. Stevens responded that his interactions with D. G. had been consensual and that he was sorry for his interactions with C. G. D. G. demanded that Stevens disclose the acts to their family.

Stevens' parents, his wife, his brother, and the father and stepmother of C. G. and D. G. gathered at Stevens' and D. G.'s grandmother's house. Stevens "told them what had gone on," admitting to having committed sexual acts with D. G. and C. G. Stevens said that he was a monster and that he was sorry. The father of D. G. and C. G. called the police. As soon as the responding officer arrived at the house, Stevens

spontaneously said, "I did it, I need counseling and I accept responsibility for my actions."

Stevens testified at trial and admitted having sexual intercourse with D. G. from the time she was 13 years old, but he denied any sexual contact with C. G.

2. *Jury charges*.

On appeal, Stevens challenges two jury instructions, one about aggravated child molestation and one about the jury's deliberations. He correctly argues that the charges are subject to review only for plain error, as he failed to object to the court's instructions when they were given. See OCGA § 17-8-58 (b). Under plain error review, we consider four steps:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

3

*Hampton v. State*, 302 Ga. 166, 167-168 (2) (805 SE2d 902) (2017) (citations and punctuation omitted).

(a) *Aggravated child molestation*.

Stevens argues that the trial court erred in charging the entirety of OCGA § 16-6-4 (c), the aggravated child molestation statute, given that the indictment charged him with aggravated child molestation only by committing acts of sodomy, not by causing physical injury to the victims. See OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."). Specifically, he argues that because the state introduced evidence that C. G. had suffered a physical injury, the tearing of her hymen, charging the entirety of OCGA § 16-6-4 (c) raised the possibility that the jury believed he committed aggravated child molestation in a manner not charged in the indictment.

"Viewing the charge here as a whole, it is highly unlikely that the jury was misled by the portion of the charge defining OCGA § 16-6-4 (c) in its entirety." *Anderson v. State*, 282 Ga. App. 58, 61 (2) (637 SE2d 790) (2006), overruled in part on other grounds by *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n. 1 (642 SE2d 56) (2007). The trial court sent out the indictment with the jury for review during

4

deliberations. The court instructed the jury that "[t]he burden of proof rests upon the state to prove every material allegation of the indictment and every essential element of the crime beyond a reasonable doubt[;]" that Stevens was on trial "for the offenses charged against him in this bill of indictment only and not for any other acts, even though such acts may incidentally be criminal[;]" and that "should [the jury] find and believe beyond a reasonable doubt that [Stevens] did . . . as alleged in the indictment commit the offenses as alleged then [it] would be authorized to find [him] guilty." "Under these circumstances, we discern no reasonable possibility that the jury was misled and convicted [Stevens] of aggravated child molestation [for causing physical injury] not alleged in the indictment. Accordingly, the error of charging OCGA § 16-6-4 (c) in its entirety was harmless." *Anderson*, 282 Ga. App. at 61-62 (2). So Stevens has not shown that the trial court's error affected the outcome of his trial such that he is entitled to reversal under the plain error standard of review. See *Hampton*, 302 Ga. at 168 (2).

(b) *Allegedly coercive charge*.

Stevens argues that the trial court's instructions to the jury after they had begun deliberating were coercive, particularly in light of two jurors' medical issues. We disagree.

5

The record shows that during deliberations, the jury sent out several notes and the court addressed them without objection from either Stevens or the state. In one note, the jury stated that the jurors had decided seven counts but were undecided on five counts and "[s]eems no one will change." The jury asked, "Are we a hung jury or can we submit what we have?" The court stated to counsel that it was too early to give an *Allen* charge, so he would urge the jury to continue deliberations. The court returned the jury's note with the notation,"You are not a hung jury. I urge you to continue your deliberations." Neither side objected.

Next the jury sent a note indicating that two jurors needed to address medical issues and asking whether the jury could return the next day. The court responded, "Please provide a list of immediate needs including phone numbers, if necessary, requesting that you continue deliberations." Neither side objected. The jury responded with notes indicating that a juror needed a cell phone to make a personal call and that the jury was still deliberating with no change.

The trial court called the jurors into the courtroom to address the issues about medical needs and phone calls and asked the jurors to give him phone numbers and specify their other needs. After the jurors exited the court room, the court addressed counsel, noting that the jury had been deliberating more than five hours and stating:

6

This is what I'd like to do subject to you all agreeing to as well, and what prompted it the bailiff that took the phone caller the woman made a comment to the person she was talking to that they are still where they were in this case two hours ago. I'd like to ask, since they've given us numbers before, is on the counts that they are undecided on without telling us what the verdict of guilty, not guilty, what the split is give me the number, give me the counts without telling me, you know, what your verdict is or what the split is, I should say, without telling me on the ones that you have not reached a verdict because they've reached a verdict, yes, I think seven, I sent the note back. All right? . . . Yeah, so those that are — on those counts that they have not reached a verdict I want them to go and to tell me, without telling me what the split is just tell me what the division is by number. Is there any objection to my asking that information of them?

The court and the attorneys discussed how to proceed and they agreed that the court would ask the jury to list in writing the counts that the jurors had decided and then the court would release them for the evening. The jury returned to the courtroom and the court instructed:

Let me add again, thank you so much for your diligence and patience and, [addressing one of the jurors with medical needs,] sir, I'm going to — we're going to talk about you in just a second. Okay? I'm — I need you to do something for me. This is in response to an earlier note you sent me. Without, this is important, without telling me what the split is on those counts as I understand you remain there's a split, there's not

7

any unanimity on those — on certain counts, might I ask you — I want you to go back and do this in writing, not tell me here, go back and write it, on those counts if you'll tell me the number of the break down. I don't need to know what the split is, guilty or not guilty do not tell me that, on those counts that you have not reached a verdict, okay, and from my understanding you are where you were two hours ago, the same place? I see heads nodding all over the place. All right. I need to know on those counts that you are — have not been able to reach a unanimous verdict where you are split wise, number wise, do not again tell me what the split is based on guilty or not guilty. I just need to know the numeric number as well. I think that may be enlightening for you and for the Court as well. Okay? If you could do that for me and send it back out to me as well that will, I think, give us a little bit of clarity as to where we are. Okay?

Sir, is it possible — is there anything — we can — we're going to resolve it one way or the other. I'm not going to keep you here all night, folks, and I'm not trying to sweat you out of a verdict. I would love us to reach closure, if we possibly can, and if you can't, you can't, all right, but obviously as it relates to that and we can come back tomorrow. I want you to hear me say that, if need be, for doing so, but if we can resolve it that's why I'm asking you to go back and do that for me first before we come to a resolution as to what we're going to do about our evening. Okay? That shouldn't take you long given what you've been telling me you've been doing for the last two hours. Okay? If you'll give me that split, Mr. or Madame Foreperson, I'm not sure who it is and I don't want to know, just write it down on a paper for me and tell me

what that split is without telling me guilty or not guilty, give me the split, you can tell me the counts too, that will be helpful to know that you have not been able to reach a unanimous verdict on. All right?

The court asked one of the jurors with medical needs, "Is there anything I can give you temporarily for the next five minutes 'til we resolve that, sir? That we can send to you, anything that you don't have in the room?" The juror responded no, and the court concluded by stating, "Can you do that for us to make that fine? We're going to make this resolution and get out of here one way or the other. Okay? Go back and do that for me, please, and come back and send it right out to me and I'll respond appropriately."

The jurors left the courtroom. The bailiff returned to the courtroom and, surprising the court and counsel, informed them that the jury had reached a verdict. The jury returned to the courtroom and read the verdict of guilty on five counts and not guilty on seven counts. The court polled the jurors, all of whom confirmed that the verdict was theirs.

"Where a defendant claims that a supplemental instruction coerced the jury's verdict, we look to the totality of the circumstances, and we consider whether the charge was coercive so as to cause a juror to abandon an honest conviction for

9

reasons other than those based upon the trial or the arguments of other jurors." *Drayton v. State*, 297 Ga. 743, 748 (2) (b) (778 SE2d 179) (2015) (citation and punctuation omitted). Here, the court specifically told the jury, "I'm not going to keep you here all night, folks, and I'm not trying to sweat you out of a verdict," and that they could return the next day. Nothing in the court's language would cause "a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Mayfield v. State*, 276 Ga. 324, 331 (2) (b) (578 SE2d 438) (2003) (citation and punctuation omitted). "Considering the totality of these circumstances, we conclude that the trial court's actions did not coerce the jury's verdicts." *Smith v. State*, 302 Ga. 717, 723 (808 SE2d 661) (2017). So Stevens "has failed to demonstrate any error, much less a plain error, on the part of the trial court." *Floyd v. State*, 307 Ga. 789, 799 (3) (837 SE2d 790) (2020).

3. *Cross-examination of C. G.*

Stevens argues that the trial court erred by refusing to permit him to cross-examine C. G. about her allegations that she had been molested by other people. We disagree.

Stevens was tried in May 2013. The pertinent provision of the Rape Shield Statute in effect at that time stated that in certain prosecutions,

10

evidence relating to the past sexual behavior of the complaining witness may be introduced if the court . . . finds that the past sexual behavior directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

OCGA § 24-4-412 (b) (2013). (The statute was substantially revised in 2019. See Ga. L. 2019, p. 81, § 5.) Under the plain language of this version of OCGA § 24-4-412, evidence of a complaining witness's past sexual behavior was admissible only if the behavior directly involved the defendant and was relevant to the issue of consent. *White v. State*, 305 Ga. 111, 118 (2) (823 SE2d 794) (2019). There was no other exception to the evidentiary restrictions of the Rape Shield Statute. Id. Stevens did not seek to question C. G. about allegations directly involving him or for any reason related to consent. So the trial court did not err by excluding this evidence.

4. *Ineffective assistance of counsel*.

Stevens argues that trial counsel was ineffective for failing to object to the allegedly coercive jury instruction and for failing to introduce evidence about C. G.'s sexual relationship with her boyfriend. We disagree.

11

As we held in Division 2 (b), the jury instruction was not coercive. "Because the instruction was not erroneous, [Stevens'] attorney did not act unreasonably by failing to object to it." *Simpson v. State*, 277 Ga. 356, 359 (4) (a) (589 SE2d 90) (2003). As we held in Division 3, at the time of trial, evidence of a complaining witness's past sexual behavior was admissible only if it directly involved the accused and was relevant to the issue of consent. *White*, 305 Ga. at 118 (2). Evidence about C. G.'s sexual relationship with her boyfriend was not related to the issue of C. G. consenting to sexual acts with Stevens, so the evidence was not admissible. "Counsel cannot be charged with deficient performance in failing to attempt to introduce inadmissible evidence." *Shelnutt v. State*, 289 Ga. App. 528, 533 (4) (657 SE2d 611) (2008).

So "[t]hese alleged errors simply do not rise to the standard set for a claim of ineffective assistance of counsel," *Simpson*, 277 Ga. at 359 (4), and do not entitle Stevens to reversal.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.