**FIRST DIVISION
BARNES, P. J.,
WATKINS, J., and SENIOR JUDGE C. ANDREW FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 28, 2025**

# In the Court of Appeals of Georgia

A23A1702. STATE v. ISLAM.

The State appeals from the trial court's grant of Md Nazmul Islam's motion for return of property. In its initial appearance in this Court, we dismissed this appeal for lack of jurisdiction upon finding that the State was not authorized under OCGA § 5-7-1 (a) (4) to bring this appeal because the State was not appealing from an order suppressing or excluding any evidence. See *State v. Islam*, A23A1702 (decided January 17, 2024); OCGA § 5-7-1 (a) (4) (authorizing the State to appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first[.]").

Our Supreme Court granted certiorari to consider whether this Court correctly dismissed the appeal. More specifically, the Supreme Court addressed whether OCGA § 17-5-30 (b), which states that seized property "shall not be admissible in evidence" against the defendant if the motion is granted, functions as a mandatory directive to *exclude* the seized property by operation of law. The Supreme Court concluded in the affirmative, and thus held that because the exclusion of the property was mandated the State could bring an appeal under OCGA § 5-7-1(a)(4). *State v. Islam*, 321 Ga. 30, 34 (912 SE2d 632) (2025) ("[T]he trial court's order is an order 'excluding evidence illegally seized' for purposes of OCGA § 5-7-1(a)(4), and the State is authorized to take an appeal."). Consequently, the Supreme Court reversed the decision of this Court dismissing the appeal and remanded for consideration of the merits of the State's appeal. Id.

Now that the case is before us on remand, we consider the State's contentions that the trial court erred in finding that the Mystic gummies seized by police are not food products, and that the State conceded the return of seized currency and paper invoices. For the reasons that follow, we affirm the trial court's judgment.

The facts relevant to this appeal disclose that the Georgia Metro Task Force ("GMTF") received an anonymous tip from a customer who claimed to have become ill and disoriented from ingesting CBD gummies that were purchased at a Chevron service station. In response to the tip, on February 10, 2022, an undercover investigator with GMTF visited the Chevron station and purchased a Delta-8 THC vape and a package of Delta-8 THC gummies from Islam, the station owner. That same day, GMTF obtained a search warrant for the station and during the execution of the warrant seized 19 packages of Mystic Labs Delta-8 THC gummies which were labeled as containing Delta-8 THC and less than .3 percent Delta-9 THC, 18 packages of Delta-8 THC vape cartridges, $6,857 in U. S. currency, and purchasing invoices and documents.[1] Islam filed a motion for the return of property, alleging an unlawful search and seizure of the Delta-8 THC gummies and other seized items. At the hearing on the motion, in addition to testimony from the GMTF investigator, there was also testimony from Islam's expert who testified about the FDA's distinctions between food and drug products and opined that Delta-8 THC gummies are not a food product. Following the hearing, the trial court granted Islam's motion and

---

[1] An investigator with the GMTF testified that the service station was not license to sale low-THC products.

ordered the return of the seized gummies. The trial court concluded that the Delta-8 THC gummies were not a food product under the Georgia Hemp Farming Act, OCGA § 2-23-3 et seq., and thus not illegal. The trial court surmised that the Delta-THC gummies were not food products because (unlike food products) "they are sold to customers seeking to experience the effects of Delta-8"; "[t]hey are not purchased or consumed for the small amount of sugar or flavoring added to the product"; and the flavors and sugar "are added for the purpose of providing a delivery system and enhancing the palatability of the product." As a result, the trial court held the State's seizure of the property unlawful and ordered "the return to [Islam of] all property seized during the execution of the search warrant."

1. Turning to the merits of the appeal, the State first contends that the trial court erred in finding that the Mystic Delta-8 THC gummies are not a food product. In support of its alleged error, the State advances several arguments, including that the trial court misconstrued the term "food product," and also asserts that the characteristics of Delta-8 THC gummies are commonly seen in food products.

Since the remand of this case, two of this Court's opinions have addressed whether Delta-8 THC gummies are controlled substances under the laws of this State.

4

In *Elements Distrib. v. State*., 369 Ga. App. 844, 847 (2) (894 SE2d 641) (2023) (physical precedent only), this Court considered whether food products infused with Delta-8 and Delta-10 THC should be considered a controlled substance under Georgia law.[2] In *Elements*, Gwinnett County police executed a warrant to search Elements Distribution's warehouse and to seize business records, currency, and both edible and nonedible items containing Delta-8 THC and Delta-10 THC. Id. at 845. The nonedible items were ultimately returned to Elements Distribution, and the company filed a petition for the return of the edible products. *Element*s, 369 Ga. App. at 846 (1). The trial court found that the edible items were controlled substances, and thus illegal, because they did not fall within an exclusion for "hemp products" within Schedule I of the Georgia Controlled Substances Act. Id. See OCGA § 16-13-25 (3) (P).[3]

---

[2] In its brief, the State notes that the *Elements* case was pending in this Court at the time it filed the appeal and that the case presented "identical issues to this appeal."

[3] Schedule I controlled substances under the Act include:
Tetrahydrocannabinol, tetrahydrocannabinolic acid, or a combination of tetrahydrocannabinol and tetrahydrocannabinolic acid which does not contain plant material exhibiting the external morphological features of the plant of the genus Cannabis, but not including such substance when found in hemp or hemp products as such terms are defined in Code

In reversing the trial court, we found that Delta-8 and Delta-10 THC already meet the definition of "hemp" under the Georgia Hemp Farming Act. Id. at 849; OCGA § 2-23-3 (5) (2021) ( OCGA § 2-23-3 defines "hemp" as "the Cannabis sativa L. plant and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with the federally defined THC level for hemp or a lower level"); OCGA § 2-23-3 (3) (2021) ("'Federally defined THC level for hemp' means a delta-9-THC concentration of not more than 0.3 percent on a dry weight basis, or as defined in 7 U.S.C. Section 1639o, whichever is greater."). We concluded that because hemp is excluded from a Schedule 1 classification under the Georgia Controlled Substances Act, products containing Delta-8 and Delta-10 THC, nonedible or otherwise, are not controlled substances unless the products also contain a concentration of more than 0.3 percent Delta-9 THC. Id at 847-849. Thus, an assertion that an individual possessed Delta-8 or Delta-10 THC products would not be enough to provide probable cause to support a warrant. Id.

---

Section 2-23-3 [ of the Georgia Hemp Farming Act].

OCGA § 16-13-25 (3) (P).

In *Patel v. State*, 375 Ga. App. 1 (914 SE2d 412) (2025), Patel's store was searched by virtue of a warrant and police seized, among other items, various edible Delta-8 THC products that the State alleged were controlled illegal substances. Id. at 1 (1). The State filed a forfeiture petition asserting that currency recovered during the search was subject to forfeiture because of its direct or indirect connection to the "possession, storage, and distribution" of the Delta-8 THC products. Id. at 1-2 (1). Patel argued that the products were not controlled substances, but rather hemp or hemp products. Id.

Following a hearing, the trial court entered judgment for the State, finding that "among other things, . . . the [S]tate had established a presumption that the products were contraband because they contained THC and that Patel had failed to rebut that presumption by showing that they were 'hemp' or 'hemp products.'" *Patel*, 375 Ga. at 2 (1). We reversed the trial court's judgment and held that "to show that a product containing THC fell outside the applicable definition of hemp, and thus was a controlled substance, the [S]tate was required to show not just that it contained delta-8-THC, but also that it contained the necessary concentration of delta-9-THC." Id. at 4 (2). More specifically, we held that "the presence of delta-8 THC alone is not

7

enough to remove a product from the definition of hemp under OCGA § 2-23-3 (5) (2021) and render it a controlled substance under OCGA § 16-13-25 (3) (P); to be a controlled substance it must also contain more than a 0.3 percent concentration of delta-9 THC." Id. The State failed to do so and thus we reversed the trial court's grant of the forfeiture petition. Id.

Here, given the primarily identical issue concerning the legality of Delta-8 TCH, we find *Patel* and *Element*s controlling as binding and persuasive precedent, respectively, in this case and conclude that the trial court did not err in finding that the Delta-8 THC gummies seized by the State were not contraband. And thus the court did not err in granting Islam's motion for return of property. See *White v. State*, 305 Ga. 111, 121 (3) (823 SE2d 794) (2019) ("[T]he Court of Appeals must adhere to the authority of those cases which it thinks state the correct principle of law.") (citation and punctuation omitted); Court of Appeal Rule 33.2 (a) (1) (noting "a published opinion in which a majority of the judges fully concur in the rationale and judgment of the decision is binding precedent;" and that an opinion in which less than all judges fully concur is physical precedent only and is "citable as persuasive, but not binding, authority") (punctuation omitted.).

2. The State contends that the trial court erred in finding that the State conceded the return of the seized currency and paper invoices. It argues that it only conceded to the return of the Delta THC-8 vape cartridges. Given our disposition in the case, this contention is moot.

*Judgment affirmed. Watkins, J., and Senior Judge C. Andrew Fuller, concur.*